Argued and submitted November 21, 1986, motion for reconsideration allowed by order April 20 and former opinion (84 Or App 423, 734 P2d 12 (1987)) withdrawn; affirmed as to defendant Mills, reversed and remanded as to defendant CML August 26, 1987

SHLIM,
*Appellant,*

*v.*

CHARAPATA, INC.,
*Defendant,*

*and*

CML, INC. et al,
*Respondents.*

(82-4149; CA A39363)

741 P2d 895

John H. Heald, Portland, argued the cause for appellant. With him on the brief was Zikes, Kayser, Freed, Smith & Heald, P.C., Portland.

Michael D. Mills, Salem, and Mills & McMillin, Salem, waived appearance for respondent CML, Inc.

Edward L. Clark, Jr., and Clark, Marsh, et al, Salem, waived appearance for respondent Mills.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Plaintiff initiated garnishment proceedings against garnishees CML, Inc. (CML), and Mills, an attorney. The trial court dismissed the proceedings. Plaintiff challenges only the dismissal of garnishee CML. We reverse.

In 1971, plaintiff leased a nursing home to defendant Charapata, Inc., (Charapata), which later sublet to CML. Charapata defaulted on its lease obligations, and plaintiff obtained a judgment against it for $34,543.58. Plaintiff served writs of garnishment on these garnishees, each of whom returned certificates indicating that they held no property belonging to Charapata. Plaintiff then filed allegations against them, asserting that CML owed Charapata about $27,500 under the sublease, and that Mills held funds of CML. The garnishees' answer denied that they owed any debts to Charapata. Mills admitted that he held funds in trust for CML. The answer also alleged that plaintiff's allegations fail to state facts sufficient to constitute a claim.

A hearing was held. CML's president testified that CML had possession of the sublet premises from May through August, 1985, that CML had not paid the rent for those months and that the rent was approximately $5,500 per month. She also testified that CML had not paid the property taxes as required by the sublease, that about $36,000 in taxes was owing and that she had "an agreement with Dr. Shlim" regarding payment of the taxes. She testified that CML has a counterclaim against Charapata in excess of $34,000 in other litigation for Charapata's alleged breach of the lease. Finally, she testified that, on the date the writ of garnishment was served, CML had $12,858.33 in a checking account and $13,118.99 in a savings account.

Plaintiff argued that, because CML owed Charapata money under the sublease, and in spite of CML's pending counterclaim against Charapata, she is entitled to the money in CML's bank accounts and the attorney's trust account. The trial court ruled:

> "The court can't find that those sums which were held by the bank or counsel were monies belonging to the judgment debtor. But I would hold that the answer which has been filed by the garnishee is sufficient. As far as I am concerned that terminates the matter."

Thereafter, an order was entered dismissing "all proceedings

on plaintiff's motions and allegations and garnishees' answers." Plaintiff challenges that order only insofar as it dismisses the proceedings against CML.

■      Plaintiff first assigns error to the trial court's refusal to award her a judgment against CML. At the beginning of the hearing, plaintiff's attorney told the trial court:

> "Mr. Mills and I have sort of tentatively agreed, with the court's approval, * * * that this is sort of a two step procedure. Today we interrogate the garnishees under oath. *If the court finds that there is reason to proceed further against the garnishee and obtain a judgment, then it's — it's my understanding that the court would set a full blown trial on the merits of that claim.* * * * I see this a little more as a court supervised deposition." (Emphasis supplied.)

By that statement to the court, plaintiff limited her requested relief at the hearing to something other than a judgment against CML. Because we will not reverse a trial court on grounds not raised below, *Corey v. Klaas,* 71 Or App 452, 455, 692 P2d 692 (1984), *rev den* 298 Or 822 (1985), we decline to consider the assignment of error.

■      Plaintiff's second assignment of error is that the trial court erred in refusing to set a jury trial on the issues framed by plaintiff's allegations and garnishees' answer. Because plaintiff's allegations stated a claim for accrued rent in favor of the judgment debtor against CML, *see Eisele v. Knight, Northern Ins. Co.,* 234 Or 468, 472, 382 P2d 416 (1963), plaintiff is entitled to a trial, unless a claim for accrued rent is not garnishable. It is. Under ORS 29.135, "debts or other monetary obligations owing by a third person" to the judgment debtor are garnishable. A claim for accrued rent is garnishable as a "debt or other monetary obligation" within the meaning of the statute.

The trial court apparently accepted CML's argument that the existence of the counterclaim for breach of contract rendered the claim for accrued rent ungarnishable. Even assuming that the existence of an unliquidated counterclaim would render a debt ungarnishable,[1] CML failed to plead the

---

[1] ORS 29.135 does not make it clear whether a debt is garnishable before setoffs or counterclaims are resolved. Professor Lacy brought this ambiguity to the attention of the legislature which enacted ORS 29.135, but it was not resolved. 1981 SB 527,

counterclaim in its answer. If a garnishee wishes to raise a counterclaim against the judgment debtor as a defense in a garnishment proceeding, the answer should set forth the counterclaim with as much particularity as would be required in an answer to a complaint. *Solomon v. Kenner,* 121 Or 407, 412, 255 P 471 (1927). Because CML failed to allege the counterclaim in its answer, it was not entitled to raise the counterclaim as a defense, and plaintiff was entitled to a trial on the merits of the claim for accrued rent without regard to the counterclaim.[2]

Affirmed as to defendant Mills; reversed and remanded as to defendant CML.

---

Minutes of the Senate Committee on Justice, June 10, 1981, Exhibit K at pp. 5-6, 8; Tape 224A, c. 411 - end, Tape 223B, c. 0 - 75. The only Oregon case that we have found on the point is *Coastal Adj. Bureau v. Hutchins,* 229 Or 418, 422, 367 P2d 430 (1961), where the court stated:

> "While we have held that a debt may be subject to the rights of an attaching creditor in certain cases even though something remains to be done by the defendant to make the claim payable, *Fireman's Fund Ins. Co. v. Walker et al,* 132 Or 73, 282 P 230, we have found no case in which we have held that * * * a debt exceeded by *bona fide* setoffs, could be declared mature and collectible at the option of a creditor."

*See also* 6 Am Jur 2d "Attachment and Garnishment," §128.

[2] Before 1981, *former* ORS 29.350 provided that "the issues shall be tried, upon proceedings against a garnishee, as upon the trial of an issue of *fact* between a plaintiff and defendant." (Emphasis supplied.) In *Argonaut Insurance Co. v. Ketchen,* 243 Or 376, 379, 413 P2d 613 (1966), the court held that the statute meant that, in a contested garnishment proceeding, fact issues are triable by a jury:

> "While a garnishment is a statutory proceeding, it is legal and not equitable in nature, and if tried as any normal issue between a plaintiff and a defendant, as required by the statute, all fact issues must be tried as in an action at law. * * * This necessarily means such issues are tried with a jury unless the parties waive a jury trial." 243 Or at 379.

In 1981, the legislature amended ORS 29.343 by changing one word significantly:

> "[T]he issues shall be tried, upon proceedings against a garnishee as upon the trial of an issue of *law* between a plaintiff and defendant." ORS 29.343. (Emphasis supplied.)

We need not decide whether the 1981 amendment eliminated jury trials in garnishment proceedings.